Filed November 5, 1895.

---

No. 1,781.

## The Germania Fire Insurance Co. of the City of New York v. Warner.

INSURANCE.—*Return of Appraisers.—Award.—Arbitration.*—The return of appraisers selected by an insurance company and the insured to determine the damage to the insured property from fire is not an award by arbitrators within the law as to the conclusiveness of awards.

DEMURRER.—*To Answer.—Admits What Facts.—Insurance.*—A demurrer to an answer does not admit the truth of an erroneous allegation thereof that the complaint declares upon an award by appraisers, and not upon a policy of insurance, as a demurrer admits as true only those facts which tend to constitute a defense.

PLEADING.—*Answer of Appraisers' Award.—Complaint Based on Insurance Policy.*—An answer of an insurance company, which merely attacks the validity of an award of appraisers selected to determine the damage, is bad where the complaint declares upon the policy, and alleges the facts with reference to the appraisement simply to show notice of the fire and want of good faith on the part of the company.

From the Montgomery Circuit Court.

*S. N. Chambers, S. O. Pickens* and *C. W. Moores,* for appellant.

*B. Crane* and *A. B. Anderson,* for appellee.

Ross, J.—This action was instituted by the appellee against the appellant. The complaint, which contains but one paragraph, omitting the caption, is as follows:

"The plaintiff complains of the defendant, and says, that on the 3d day of April, 1893, the plaintiff was the owner and in possession of the following personal property, to wit: Household furniture (useful and ornamental), beds, bedding, linen, family wearing apparel, silver and plated ware, printed books and music, piano forte, sewing machine, pictures and their frames, fuel and family stoves, contained in the one and one-half story shingle-roof brick dwelling house occupied by said plaintiff as a dwelling house, and situate at No. 113, on the west side of North Water street, in the city of Crawfordsville, Indiana, and in its additions adjoining and communicating.

"That on said day, in consideration of the premium of thirty dollars to be paid by the plaintiff, the defendant by its policy of insurance of that date, a copy of which is filed herewith and made a part of this complaint, marked 'Exhibit A,' promised and agreed to insure, and did insure plaintiff's said personal property against loss or damage by fire to the amount of three thousand dollars from twelve o'clock noon on said 3d day of April, 1893, to twelve o'clock noon on the 3d day of April, 1896.

"That afterward, on the 23rd day of September, 1893, plaintiff moved his said personal property from said brick building situate at No. 113 on the west side of North Water street into the one-story frame, shingle-roof dwelling house situate on the south side of East Jefferson street, No. 309, in said city of Crawfordsville, Indiana, and the defendant was notified of said change, and consented thereto, and on said date wrote its consent upon the face of said policy as follows: 'Sep-

tember 28, '93.—This insurance is hereby transferred to cover on same household goods now contained in the one-story frame, shingle-roof dwelling house situate on the south side of East Jefferson street, No. 113, Craw–fordsville, Indiana.          .          Ed Voris, Agt.'

"That on the 23d day of June, 1894, said personal property mentioned and described in said policy, and therein and thereby insured against loss or damage by fire, was destroyed and damaged by fire, a part of it being wholly destroyed and a part badly damaged, in all to the amount of twenty-five hundred dollars; that plaintiff forthwith notified Ed Voris, defendant, resident agent, and gave notice to the defendant of said loss by telegraph, informing defendant of said fire and loss.

"That afterward, on the 26th day of June, 1894, the defendant sent his adjuster of losses and state agent, one Frank W. Armstrong, to Crawfordsville, Indiana, and to this plaintiff for the purpose of adjusting said loss under said policy; that said Armstrong, on said 26th day of June, 1894, as such agent and adjuster, called upon plaintiff for the purpose of adjusting said loss, and having inspected said premises and the property so damaged by said fire, plaintiff and Armstrong were not able to agree touching said loss and damage to said personal property, and said Armstrong, on be-half of the defendant, demanded that the matter and amount of such loss should be submitted to appraisers, and presented to plaintiff for execution a written agree-ment for submission to appraisers upon a printed blank therefor provided by the defendant, wherein the defend-ant selected as its appraiser one Frederick Geiger; that thereupon plaintiff selected as his appraiser one J. A. Joel, and the names of said appraisers were inserted in said agreement and the same was then executed by

plaintiff and by the defendant by its said agent, and the same reads in the words and figures following :

" 'This agreement made and entered into by and between Lee S. Warner of the first part, and the insurance company or companies whose name or names are signed hereto of the second part, witnesseth, that J. A. Joel and Frederick Geiger shall appraise and estimate the loss upon the property damaged and destroyed by the fire of June 23, 1894, as specified below, provided that the said appraisers shall first select a third, who shall act with them in matter of difference only. The award of said appraisers or any two of them, made in writing in accordance with this agreement, shall be binding upon both parties to this agreement.

" 'It is expressly understood that this agreement and appraisement is for the purpose of ascertaining and fixing the amount of said loss only to the property hereinafter described, and shall not determine, waive or invalidate any other right or rights of either party to this agreement. The property on which the loss or damage is to be determined is as follows, to wit : Upon household furniture (useful and ornamental), beds, bedding, linen, family wearing apparel, silver and plated ware, printed books and music, piano forte or organ, sewing machine, pictures and their frames, at not exceeding cost price, fuel and family stoves, all while contained and only while contained in above-named dwelling house.

" 'It is further expressly understood and agreed that in determining the loss or damage upon the property hereinafter mentioned, that said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, or the actual cash value thereof, at and immediately preceding the time of the fire, and in case of depreciation of the property from use, age, con-

dition, location or otherwise, a proper deduction shall be made therefor.

" 'In witness whereof we have hereunto set our hands at Crawfordsville, Indiana, this 27th day of June, 1894.

        " 'LEE S. WARNER,

        " 'GERMANIA FIRE INS. CO. OF N. Y.,

        " 'By FRANK W. ARMSTRONG, St. Agt.'

"That thereupon plaintiff requested that an umpire or third appraiser should be selected by said two appraisers, and said Armstrong, on behalf of the defendant, stated and represented that the selection of such umpire or third appraiser would be necessary only in case said two appraisers disagreed as to amount of loss or damage upon any one or more articles, and that such selection was not necessary, and thereupon the selection of such umpire or third appraiser was waived.

"That said two appraisers took and subscribed an oath to act with strict impartiality and made a true, just and conscientious award of said loss and damage, and then proceeded to appraise and did appraise plaintiff's loss and damage upon each of said articles separately, and in such appraisement of loss and damage no disagreement or difference whatever as to the amount of loss or damage upon any article arose between said two appraisers, but they agreed throughout as to amount of loss or damage on each and every article, and on said day submitted their award in writing, whereby and wherein the plaintiff's said loss and damage was fixed at twenty-two hundred, ninety-nine dollars and fifty cents, which award is in the words and figures following, to wit:

" 'To the parties in interest: We have carefully examined the premises and remains of the property hereinbefore specified, in accordance with the foregoing appointment, and have determined the loss and damage

to be $2,299.50 (twenty-two hundred and ninety-nine dollars and fifty cents.)

"'Witness our hands this 27th day of June, 1894.

"'J. A. JOEL,

"'FREDERICK GEIGER,

"'Appraisers.'

"That a copy of said agreement for submission to appraisers and the declaration of said appraisers and their said award is filed herewith and hereof made a part, marked 'Exhibit B.'

"That said Armstrong as such agent was present while said appraisers were making their said appraisement, and knew and had full notice at the time that said appraisement and award were being made and the amount thereof, and made no objection thereto, but after said award was made and on said day informed this plaintiff that he would receive the amount of said award at the expiration of sixty days. And also informed plaintiff that he might place his said house in order and repair and might repair all damage to said personal property and dispose of such articles as were bodily or totally damaged, and that plaintiff in pursuance thereof and relying upon said consent and information, did repair and restore said house and property and disposed of said bodily injured property.

"That on the 29th day of June, 1894, plaintiff made out a particular account and proof of his said loss, signed and sworn to by him, and sent the same by registered mail, postage prepaid to the defendant, and in said particular account and proof of loss plaintiff stated that there was no other insurance whatever on said property, and that he was at the time of the fire the owner of said property so insured, and the actual cash value of the same, and that the fire occurred and the loss was sustained on the said 23d day of June,

1894, and that the fire originated from causes unknown to plaintiff.

"And plaintiff says he cannot give a more particular statement of the matter and facts set forth in said account and proof of loss, for the reason that the same is now in the possession of the defendant.

"That afterward, on the 12th day of July, 1894, defendant returned said account and proof of loss to plaintiff, with certain particular objections thereto, and on the 21st day of July, 1894, plaintiff made out an additional proof of loss covering the particular points and objections made by defendant, and subscribed and swore to the same and attached it to said original proof, and on said day sent them by registered mail, postage prepaid, to the defendant.

"That afterward, on the 14th day of August, 1894, defendant returned said proofs of loss to plaintiff without any objections whatever thereto, and on the 15th day of August, 1894, plaintiff again returned the same by registered mail, postage prepaid, to the defendant.

"That afterward, on the 27th day of August, 1894, the defendant again returned said proofs of loss, with certain objections thereto, to the plaintiff, and on the 20th day of September, 1894, plaintiff made out and subscribed and swore to a second additional proof of loss, complying with and meeting the objections made by defendant to the said proofs of loss, and attached said additional proofs to said original proofs and sent them by registered mail, postage prepaid, to the defendant, and defendant has ever since had and now holds the same, and more than sixty days have elapsed and passed since defendant last received said notice and proofs of said loss and fire.

"That on the — day of September, 1894, the defendant through its attorney, Smiley N. Chambers, called

upon the plaintiff and demanded that he submit himself to an examination under oath touching his said loss, and on the 17th day of September, 1894, plaintiff did submit himself to such examination, and he was then fully examined by said Chambers touching his said loss under oath.

"That said personal property was at the time of such fire and loss situate and contained in said frame dwelling house on said Jefferson street, and was the property of this plaintiff, and was of the value of twenty-five hundred dollars, and said house was then occupied by plaintiff as his dwelling ; that no part of said loss has been paid, and the same is now due ; that plaintiff has duly performed all the terms and conditions of said policy on his part to be performed.

"Wherefore he demands judgment for twenty-five hundred dollars."

Then follows a copy of the policy of insurance, of the agreement for submission and of the report of the appraisers.

To the complaint the appellant filed an answer as follows :

"The defendant for second paragraph of answer to the first paragraph of plaintiff's complaint says that this action is upon a policy of insurance whereby the defendant company indemnified the plaintiff, Lee S. Warner, against loss or damage by fire upon certain property in said policy of insurance described and an award therein made.

"That among the conditions and provisions of said policy was the following :

"'In case differences shall arise touching any loss or damage upon building or personal property after proof thereof has been received in due form the matter shall, at the written request of either party, be submitted to

impartial appraisers, one to be selected by the assured and one by the company, who shall first elect one umpire or third appraiser, and shall then proceed to appraise on each article separately, and in case of such appraisers' disagreement as to the amount of loss or damage upon any one or more articles they shall appeal to the aforesaid third appraiser, who, conjointly with them, shall appraise such articles only, and the decision of two of said appraisers under oath shall be binding as to the amount of such loss or damage, but shall not decide the liability of the company under this policy.'

"And the defendant says that after it had received notice of said loss, in pursuance of the provisions of said policy, it requested that appraisers be selected in accordance with the terms thereof to appraise each article separately and to assess the amount of such loss or damage upon each article separately; that in accordance with said request an agreement in writing for submission to appraisers was made by the plaintiff and the defendant on the 27th day of June, 1894, a copy of which agreement is herewith filed and made a part hereof, marked 'Exhibit A'; that in pursuance of said agreement this defendant selected one Frederick Geiger upon its part and the plaintiff selected one J. A. Joel appraiser on his part; and the defendant says that it made no other agreement and gave no other directions touching such appraisal except that which is contained in said contract in writing.

"That on said 27th day of June, 1894, the said Joel and Geiger, selected as above stated, took their oath in writing indorsed upon said agreement, which oath is made a part of said exhibit, whereby they swore they would act with strict impartiality in making the appraisement and estimate of the loss and damage upon the property hereinbefore mentioned, in accordance with

the foregoing appointment, and that they would make a true and just and conscientious award of the same according to their best knowledge, skill and judgment. Each of them also herein swore that he is not related to the assured, either as creditor or otherwise, and not interested in said property or the insurance thereon.

"And the defendant avers that the said Geiger and Joel then and thereby undertook on themselves the duty of such appraisers in accordance with the terms and provisions of the submission hereinbefore referred to, and that said appraisers entered upon the performance of their duty and made an alleged appraisement of the loss and damage to the plaintiff upon the property insured under said policy, and assessed the same at the sum of two thousand, two hundred and ninety-nine dollars and fifty cents.

"And the defendant says that it at that time and has ever since and does now deny said appraisement so made by said Geiger and Joel, and avers that the same is not in accordance with the terms and provisions of submission to them by the plaintiff and the defendant, but the defendant says that the same is illegal, void, and of no effect for the reasons hereinafter stated:

"1. He says that said J. A. Joel so selected as appraiser by the plaintiff herein was not a fair and impartial appraiser of said property, but that he was interested in said appraisement, and represented the interests of the plaintiff herein solely, and was adverse to the interests of the defendant; that the said Joel at the time of his appointment, as the plaintiff then well knew, was related by marriage to the plaintiff herein, and that he was selected as such appraiser by the plaintiff with full knowledge of the fact and because of the fact, and because the plaintiff knew that he was not a fair and im-

partial appraiser, but would be partial and favorable to the interests of the plaintiff in such appraisement, that is to say, that the plaintiff's brother married the sister of said Joel, and that plaintiff's brother and the sister of said Joel were at that time living and were on friendly and intimate terms both with the plaintiff and with the said Joel, and, further, the defendant avers that but a short time prior to the selection of the said Joel as appraiser by the plaintiff the plaintiff had purchased from the said Joel a stock of goods, situate in the city of Crawfordsville, Indiana, and was largely indebted to him at the time of the said appointment and at the time that he made the alleged appraisement of goods; that plaintiff was indebted to the said Joel at the time of such selection and appraisement in the sum of about four thousand dollars, and the plaintiff is unable to say, and does not herein undertake to say, whether or not said indebtedness existing at said time was on account of the purchase of said stock of goods or on account of money loaned by the said Joel to the said plaintiff, or on account of other business transactions, but avers the fact to be that at the time of making said appraisement the plaintiff was indebted to said Joel in a large amount, of all of which the defendant says it had no knowledge at the time of the selection of said appraisers nor at the time of the appraisement of said goods was made.

"2.    The defendant avers as a reason why said appraisement was illegal and void was because of the misconduct of the plaintiff toward the said appraisers and because of the misconduct of each of said appraisers in connection with and touching the making of said appraisement.

"And the plaintiff avers that the said Frederick Geiger and the plaintiff were acquaintances at the time

said Geiger was selected as appraiser; that they belonged to the same secret society, and were on intimate terms of friendship with one another, and that at the time the said Geiger appeared for the purpose of making said appraisement the plaintiff took him into a saloon and treated him to beer and other liquors and talked with him touching the appraisement of said goods, and that during the progress of the making of said appraisement at the house of the plaintiff the plaintiff furnished beer and wine and other liquors to the appraisers, who drank the same, and that in making the said appraisement the said appraisers frequently consulted with the plaintiff in the absence of the defendant, or its agent, touching the goods that were lost, and that the appraisers took the statements of the plaintiff as to the value of said goods and as to the loss and damage thereto without inspection and without examination, and put into said appraisement a large amount of loss and damage, to wit, nine hundred dollars on goods that were never inspected by them, and about which they had no knowledge whatever except that which was given to them by the plaintiff himself, and that the said appraisers did not appraise each article of goods alleged to be lost or damaged separately, and did not place upon each separately a sound value and the loss and damage thereto, and did not allow for the depreciation by use, as provided in the terms of the policy and in the terms of such submission, but in many instances allowed the plaintiff the full amount of cost price of said goods, although the same had been in use and under wear for years; and that said appraisers, acting under the influence and at the request of the plaintiff, appraised said goods at much more than its actual cost price, and appraised the loss and damage thereon at much more than the actual loss or damage upon the

478    APPELLATE COURT OF INDIANA,

The Germania Fire Ins. Co. of the City of New York *v.* Warner.

same. All of which the defendant had no knowledge of at the time and had no opportunity to object to, and which the defendant did not learn until after the said appraisement had been completed and the return made thereon as set forth in said submission and agreement.

"3. And the defendant further avers as a further objection to the validity of said appraisement that by the terms of the policy herein sued on and by the terms of the submission it was the duty of the said appraisers, before proceeding with the work of said appraisement, to select an umpire or third appraiser, and that the three so selected should then proceed to appraise on each article separately.

"But the defendant avers that said Geiger and Joel, selected as hereinbefore stated, proceeded to the work of said appraisement without the selection of said umpire, to which the defendant company at the time objected.

"4. And as a further objection to the validity of said appraisement the defendant says that by the terms and provisions of the policy it was provided that the decision of said appraisers returned under oath should be binding as to the amount of such loss and damage, but the defendant says that the said Joel and Geiger did not return their decisions as to the appraisement of the specific articles submitted to them for appraisement under oath, but rendered their return only as set out by the indorsement upon the submission or agreement hereinbefore set out, marked 'Exhibit A.'

"And the defendant says that all of said omissions and acts of commissions upon the part of said appraisers as hereinbefore set out which the defendant avers are not within the terms of the submission, nor within the terms of the policy of insurance herein sued on, without the knowledge or consent or approval of this defendant, and that by reason of all the influences, conditions, acts

and relationships of said parties as set forth in this paragraph of answer, the said appraisement so made as set out with the illegal complaint is absolutely illegal and void.

. "Wherefore, the defendant prays judgment that said award be set aside and held illegal and void and for judgment accordingly."

A copy of the agreement for submission and of the report of the appraisers was filed with this answer.

To this answer appellee filed a demurrer, which was sustained by the court, and this ruling is the only specification of error assigned on this appeal.

It is very earnestly insisted on behalf of the appellant that the theory of the complaint is to recover on the award and not an action on the policy of insurance. On the other hand, the appellee contends that the action is upon the policy, and that the facts alleged with reference to the appraisement is simply to show notice of the fire and want of good faith on the part of the appellant.

We think the theory of the complaint is the one suggested by the appellee, namely: "To recover upon the policy." That is the general scope and tenor of the complaint.

The answer, while admitting that the action is upon the policy of insurance, proceeds upon the theory that the question of appellant's liability had been submitted to arbitrators and an award made.

If the agreement entered into between appellant and appellee was a submission of all matters in dispute between them under the terms of the policy of insurance, then the return or award of the arbitrators is conclusive upon them both and is as effective as the judgment of a court of justice. *Terre Haute, etc., R. R. Co.* v. *Harris*, 126 Ind. 7 ; *Baltes* v. *Bass Foundry and Machine Works*, 129 Ind. 185. If however, it was

merely the submission of the question of the ascertainment of the value of the property destroyed or injured, and not to determine the liability of appellant for such property, then it is not an award by arbitrators such as is contemplated by the law as an arbitration.

"Arbitration is where the parties injuring and injured submit all matters in dispute concerning any personal chattels or personal wrong to the judgment of two or more arbitrators, who are to decide the controversy." Sharswood Blackstone Com., Book 3, ch. 1, note 2.

The contention of counsel for appellant that the demurrer of appellee to the answer admits the truth of the facts alleged therein, is correct to the extent that a demurrer admits as true those facts which are well pleaded. That is, it admits as true those facts which tend to constitute a defense to the cause of the action, but it does not admit as true facts which do not go to make a defense. In other words, the nature of the action is not changed by allegations in the answers that the theory of the complaint is different from what the facts alleged show it to be. To the extent that facts are well pleaded they are admitted by a demurrer.

The only question submitted to the appraisers under the agreement, was that of determining the value of the property totally destroyed and the injury to that not destroyed. That this was the only question submitted is clear from the language of the agreement, wherein it says: "It is expressly understood that this agreement and appraisement is for the purpose of ascertaining and fixing the amount of said loss and damage only * * * and shall not determine, waive or invalidate any other right or rights of either party to this agreement."

The appraisers fixed the value of the property destroyed and the extent of the injury to that not destroyed. To that extent the parties had agreed, and had appellant

acknowledged its liability and tendered to appellee the amount agreed upon by the appraisers, he would have been bound thereby. The appellant has not only failed to pay or tender the amount thus ascertained, but has denied all liability on the policy.

The answer is not sufficient as a bar to the cause of action predicated upon the policy of insurance, hence the court did not err in sustaining the demurrer thereto.

Judgment affirmed.

Filed November 5, 1895.